UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEFFREY WYNTER, A18-560-301,

                        Petitioner,

            -v-                                              13-CV-1027-JTC

TODD L. TRYON and
MICHAEL PHILLIPS, Field Office
Director,

                        Respondents.

_____

## INTRODUCTION

Petitioner Jeffrey Wynter, an alien under a final order of removal from the United

States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241 seeking release from detention in the custody of the United States Department of

Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending

the execution of a final immigration order of removal issued against him.  Item 1.  As

directed by this court's order entered October 28, 2013 (Item 2), respondent[1] has

submitted an answer and return (Item 4), along with an accompanying memorandum of law

(Item 5), in opposition to the petition, and petitioner has filed a responding memorandum

(Item 8).

For the reasons that follow, the petition is denied.

_____

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director,
Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal
Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also*
§ 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person
detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Jamaica, was admitted to the United States at New York, New York, on or about July 11, 1969, as a lawful permanent resident. *See* Item 4-2 (Exh. A, attached to Declaration of DHS Supervisory Detention and Deportation Officer David Krygier, Item 4-1), pp. 2, 5, 12.

According to DHS records, petitioner has been convicted of the following criminal offenses while present in the United States:

a.   On or about June 12, 1984, petitioner was convicted in the Monroe County Court, State of New York, of Attempted Sexual Abuse in the 1st Degree, in violation of N.Y. Penal Law §§ 110-130.65-01. For this offense, he was sentenced to 5 years probation. On March 26, 1986, petitioner was found in violation of probation and he was re-sentenced to 1 year imprisonment.

b.   On or about May 7, 1986, petitioner was convicted in the Monroe County Court, State of New York, of Sexual Abuse: contact forcible compulsion, in violation of N.Y. Penal Law § 130.65-01. For this offense, he was sentenced to 3 to 6 years imprisonment.

c.   On or about May 13, 1996, petitioner was convicted in Rochester City Court, Rochester, New York, of Criminal Contempt in the 2nd Degree, in violation of N.Y. Penal Law § 215.50-03. For this offense, he was granted a conditional discharge.

d.   On or about July 19, 2000, Petitioner was convicted in Monroe County Court, State of New York, of Rape in the 1st Degree, in violation of N.Y. Penal Law § 130.35- 1. For this offense, he was sentenced as a second felony offender to 20 years imprisonment. Petitioner appealed the conviction to the Appellate Division of New York State Supreme Court, Fourth Department, which unanimously affirmed the conviction. Petitioner's request for leave to appeal to the New York State Court of Appeals was denied. Petitioner filed in the United States District Court for the Western District of New York, a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court for Rape in the 1st Degree. On December 6, 2006, Petitioner's § 2254 habeas petition was granted. See *Wynters v. Poole*, 464 F. Supp. 2d 167 (W.D.N.Y. 2006).

e.    On or about August 23, 2000, Petitioner was convicted in Monroe County Court, State of New York, of Rape in the 3rd Degree, in violation of N.Y. Penal Law § 130.25-02 and Sodomy, in violation of N.Y. Penal Law § 130.40-02.  For these offenses, he was sentenced to 1½ to 3 years imprisonment.  On March 19, 2008, this conviction was vacated by a New York criminal court pursuant to New York Criminal Procedure Law § 440.10.  Petitioner was tried again, and on September 25, 2008, he was found guilty of Attempted Rape in the 3rd Degree, in violation of N.Y. Penal Law §§ 110-130.25-02 and sentenced to time served (approximately 6 years and 10 months).  Petitioner appealed the September 25, 2008 conviction, which was affirmed by the Appellate Division, Fourth Department, on November 10, 2011.  Petitioner then applied for leave to appeal to the Court of Appeals of New York which application was denied on March 8, 2012.

Item 4-1, ¶ 9.

On October 25, 1988, petitioner was served with an Order to Show Cause which charged him with being deportable based upon his 1984 and 1986 convictions on charges of sexual abuse.  *See* Item 4-2, p. 5.  On April 7, 1992, petitioner was granted a waiver against deportation pursuant to the former Immigration and Nationality Act ("INA") § 212(c).  *Id.*

On September 18, 2006, petitioner was served a Notice to Appear ("NTA") which charged him with being removable from the United States as an aggravated felon based on his criminal conviction on August 23, 2000 for the offenses of Rape in the 3rd Degree and Sodomy in the 3rd Degree.  *Id.* at 6, 16.  On November 28, 2007, an immigration judge ("IJ") found petitioner to be an aggravated felon ineligible for any forms of relief and ordered him removed from the United States to Jamaica.  *Id.*

On March 24, 2008, petitioner filed a motion with the Board of Immigration Appeals ("BIA") seeking to reopen his immigration proceedings.  *Id.* at 6.  On April 4, 2008, the BIA issued a written decision granting petitioner's motion and terminating his removal

proceedings because the rape and sodomy convictions underlying petitioner's removability were vacated by a New York criminal court pursuant to New York Criminal Procedure Law § 440.10.  *Id.* at 6-7.  As mentioned above, petitioner was re-tried in September 2008, in Supreme Court, Monroe County.  He was found guilty of Rape in the 3rd degree, and was sentenced to time served.  *Id.* at 16, 56.  His appeal from this conviction was finally dismissed by the state courts on March 8, 2012.  *See People v. Wynters*, 932 N.Y.S. 2d 757 (App. Div. 4th Dep't Nov. 10, 2011), *leave to appeal denied*, 18 N.Y.3d 963 (Mar. 8, 2012).

Petitioner's removal proceedings were then re-commenced by issuance of a further NTA on July 16, 2012, charging petitioner with being subject to removal from the United States pursuant to INA § 237(a)(2)(A)(iii), as an alien who has been convicted of an aggravated felony as defined in INA § 101(a)(43)(A) (murder, rape or sexual abuse of a minor). *Id.* at 12-13.  Petitioner was taken into DHS custody pursuant to an arrest warrant, also issued on July 16, 2012, and executed by DHS officers at petitioner's residence in Rochester, New York, on July 26, 2012.  *Id.* at 14-18.

On September 5, 2012, IJ Steven J. Connelly denied petitioner's request for change in custody status and determined that petitioner was subject to mandatory detention pursuant to the provisions of INA § 236(c).  *Id.* at 11.  On September 25, 2012, IJ Connelly denied petitioner's further requests for relief and ordered petitioner removed from the United States to Jamaica.  *Id.* at 10.  This removal order became administratively final on February 12, 2013, when the BIA dismissed petitioner's appeal.  *Id.* at 6, 9.

Meanwhile, on December 12, 2012, petitioner filed a prior action in this court (*Wynter v. Phillips, et. al.*, No. 12-CV-1233-JTC) seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that DHS violated his substantive due process rights by detaining him at the Buffalo Federal Detention Facility in Batavia, New York, since July 26, 2012, without conducting an individualized bond hearing pursuant to INA § 236(a).  By decision and order entered on May 2, 2013, this court denied the petition as premature. *Wynter v. Phillips, et. al.*, 2013 WL 1879667 (W.D.N.Y. May 3, 2013).   The court determined that, since petitioner was an alien determined to be removable based on a conviction for an aggravated felony, his detention was mandatory pursuant to INA § 241(a) for a period of ninety days following the BIA's denial of his appeal from the IJ's removal order, and the statutory period had not yet expired.

On or about February 12, 2013, DHS sent a presentation packet to the Consulate General of Jamaica (the "Consulate") in New York City, requesting that a travel document be issued for petitioner's removal.   Item 4-2, p. 25.   DHS records further reflect that petitioner was interviewed by a representative of the Consulate on February 26, 2013. Item 4-1, ¶ 21.   Then, on March 1, 2013, petitioner filed in the United States Court of Appeals for the Second Circuit a *pro se* petition for review of the BIA's order of February 12, 2013, accompanied by a request for stay of removal.   The petition for review and motion for stay were denied by the Second Circuit on March 17, 2014.  *See* Docket Sheet, *Wynter v. Holder*, 2d Cir. Docket # 13-720.

While the petition for review was pending in the circuit court, on March 11, 2013, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30

days to assist in obtaining a travel document for his removal from the United States.  Item

4-2, p. 8.  The warning form advised petitioner, among other things, of penalties under INA

§ 243 for conniving or conspiring to prevent or hamper his departure from the United

States, and also advised him that pursuant to INA § 241(a)(1)(C), a failure to comply or

provide sufficient evidence of his inability to comply may result in the extension of the

removal period and subject him to further detention.  *Id.*

    In accordance with immigration regulations (*see* 8 C.F.R. § 241.4), DHS reviewed

petitioner's custody status in May 2013, and notified petitioner by letter dated May 14,

2013, that based upon the totality of information available—including his criminal history

demonstrating "wanton disregard for the laws of the United States" (*id.* at 6), DHS

considered him to pose a risk of flight and a threat to the safety of the community if he was

released from custody.  *Id.* at 5-7.

    An additional review of petitioner's custody status was conducted by DHS

Headquarters Post Order Custody Review Unit ("HQPOCRU").  As part of that review, a

panel was convened on August 8, 2013, at the Buffalo Federal Detention Facility to

conduct an in-person interview of petitioner.  *Id.* at 2, 4.  Following completion of the file

review and interview, petitioner was notified on or about August 15, 2013, that DHS had

determined to continue his detention.  *Id.* at 2-3.

    The present petition was filed in this court on October 7, 2013, seeking habeas

corpus review pursuant to 28 U.S.C. § 2241 on the ground that  his continued detention

in DHS custody since July 26, 2012, is unlawful since it has exceeded the "presumptively

reasonable" six-month period established under the due process standards set forth by the

United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## **DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA—respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order.  In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final.

(ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also authorizes the Attorney General to continue detention of criminal aliens—*i.e.*, aliens ordered removed due to conviction of a crime—beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …."  INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

removal, the court adopted a period of six months  "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal.  Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1).  The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents."  8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

[T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was placed into DHS custody on July 26, 2012, pursuant to a Warrant of Arrest, pending completion of immigration removal proceedings which were re-commenced on July 16, 2012 following exhaustion of petitioner's appeals from his state court conviction and sentence after retrial. This "pre-final" mandatory detention was authorized pursuant to INA § 236(c)(1)(B) ("The Attorney General shall take into custody any alien who … is deportable by reason of having

committed [an aggravated felony]").  That detention under INA § 236 continued until February 12, 2013, when the BIA dismissed petitioner's appeal of the IJ's order of removal. *See* 8 C.F.R. § 1241.1(a) (order of removal shall become final upon dismissal of appeal by the BIA).

After the order of removal became final on February 12, 2013, petitioner's detention was authorized pursuant to INA § 241(a)(1)(B)(i) (90-day period begins on the date the order of removal becomes final), and § 241(a)(2) ("During the removal period, the Attorney General shall detain the alien.  Under no circumstance during the removal period shall the Attorney General release an alien who has been found … deportable [as a criminal alien].").  Accordingly, DHS promptly commenced efforts, on February 12, 2013, to secure a travel document for petitioner's removal to Jamaica.  *See* Item 4-1, ¶ 18.

However, on March 1, 2013, petitioner sought review by the Second Circuit of the BIA's dismissal of his appeal from the IJ's removal order by way of a petition for review and motion for stay of removal, which numerous decisions by the federal courts within this circuit have held triggers the application of a "forbearance policy" under which DHS has agreed not to effectuate the removal of an alien while the petition for review remains pending before the circuit court.  *See, e.g., Galarza v. Holder*, 2014 WL 526638, at *4-5 (W.D.N.Y. Feb. 7, 2014) (citing cases); *Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. Nov. 3, 2011) (filing of petition for circuit court review of final order of removal along with motion for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, forbearance policy is "the equivalent of a court-ordered stay of removal").

Pursuant to this policy, the removal period which began on February 12, 2013, was "effectively stayed" as of March 1, 2013, when petitioner filed his petition for review and motion for stay of removal with the Second Circuit. *Luna-Aponte*, 743 F. Supp. 2d at 190.

Furthermore, as this court has previously recognized, "[d]etention during an appellate stay of removal, whether formal or in accordance with the Second Circuit's informal forbearance policy, generally is not indefinite because the litigation itself has a definite endpoint." *Andreenko v. Holder*, 2012 WL 4210286, at *3 (W.D.N.Y. Sept. 18, 2012) (citing *Prieto–Romero v. Clark*, 534 F.3d 1053, 1065 (9th Cir.2008) (alien's lengthy detention not indefinite under INA § 236 where endpoint foreseeable with end of litigation); *Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir.2004) (holding alien's detention during judicial review not indefinite because it has a "definite and evidently impending termination point"); *Obikanye v. INS*, 78 F. App'x 769, 772 (2d Cir. Oct.24, 2003) ("Because Obikanye's removal is reasonably foreseeable, his detention does not implicate *Zadvydas*; he will be subject to removal if this Court denies his pending petition for review, and, if he prevails on the petition for review and is granted asylum, he will be released. Accordingly, the district court properly denied his § 2241 petition."). As in *Andreenko*, since the Second Circuit recently dismissed the petition for review and motion for stay of removal, the endpoint in petitioner's litigation challenging the underlying removal order has been reached, and the forbearance policy is no longer in effect. DHS can therefore promptly recommence efforts to secure a new travel document for petitioner from the Jamaican Consulate, and there is nothing in the petition or elsewhere in the record before the court

to indicate that DHS will be unable to execute the final order of removal within a reasonable time hence.

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment. *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that eight-year detention pending deportation violates substantive due process); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *3 (W.D.N.Y. Jan. 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Alternatively, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing." *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

-13-

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate a reasonable belief that there is no significant likelihood of removal to Jamaica in the reasonably foreseeable future. As indicated above, on the same day that the IJ's removal order became administratively final upon the BIA's dismissal of petitioner's appeal, DHS immediately contacted the Jamaican Consulate to request the documents necessary for removal and repatriation. The request remains pending with the Consulate, and there is nothing in the record before the court to indicate that Jamaican authorities are inclined to deny the request.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to Jamaica, indicating no institutional barriers to petitioner's removal. For example, DHS reports show that in fiscal year ("FY") 2009, a total of 1,664 aliens were repatriated to Jamaica; in FY 2010, 1,487 aliens were repatriated to Jamaica; and in FY 2011, 1,474 aliens were repatriated to Jamaica. *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3. These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the Jamaican government can be accomplished within the reasonably foreseeable future now that the circuit court has dismissed the petition for review, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Jamaica.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described

-14-

above.  Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*.  However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*.  *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on the delay resulting from his request for circuit court review of the final order of removal to claim that his prolonged detention violates substantive due process. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated:  April 16, 2014